BARRY, Judge.
A mother appeals a judgment awarding an increase in child support and making past due child support payments executory. She seeks a further increase and urges that arrearages exceed the amount awarded.
Donna and Lyle Stockstill were divorced in March 1976, and custody of their two minor children, Shannon and September was awarded to Donna. In the divorce decree Lyle was ordered to pay $400 per month child support.
Rules in 1977 to increase and decrease child support were dismissed and the prior child support award remained in effect.
Donna was divorced from a second marriage and given custody of Shane who was bom during that marriage. She was awarded $300 per month child support for Shane from her second husband.
In September 1987 Donna filed a rule for contempt and to increase child support. She alleged that Lyle did not pay $2,000 of support from May through September. She claimed a change in her circumstances and requested an increase in support to $1,000 per month.
In March 1988 Donna alleged arrears in child support payments in excess of $10,-000.
Trial was held on May 6 and May 31, 1988. On July 1, 1988 a judgment increased support to $650 per month and made $3,750 in past due child support exec-utory. Attorney’s fees of $500 were awarded. According to the reasons for judgment, $900 was past due prior to filing the rule. The balance represents the increase in support retroactive to the date of filing the rule.
CHILD SUPPORT
Donna claims that the increase to $650 is inadequate. She says the evidence clearly shows that Lyle’s business grossed between $5,000,000 and $6,000,000 annually.
Lyle testified that he was employed by Torch, Inc., which was engaged in oil field services and owned by him and his present wife as equal shareholders. He also owns an unspecified interest in “Captain Shane Seafood” and about 140 acres of forestry land outside of Picayune, Mississippi.
Lyle owns a house near Biloxi in which Donna formerly resided. She was unable to make the mortgage payments and was threatened with foreclosure. Lyle apparently paid the mortgage so that Donna and her three children could live there. Donna transferred the property to Lyle and later moved out. It is unclear whether Donna was evicted. The house had appraisals of about $40,000 and $57,000 respectively and was not rented.
Lyle stated that the “company” owns property on Engineers Road and his present wife purchased their home prior to their marriage and it is her separate property. There is no evidence as to its value.
Lyle and his wife had a contract making them separate in property. Donna’s counsel proffered Lyle’s testimony regarding his wife’s assets. It was established that the marriage contract had been rescinded, but we do not know if the proffer was considered by the trial court.
According to the proffer, Lyle testified that his wife owns 50% of Delta Catering, an offshore catering business. She owns an unspecified interest in Captain Shane Seafood and the “Hingle estate” which includes Gulf Seafood, an oil distributorship. Lyle owns a 1983 Chevrolet Blazer and his wife drives a 1986 Jeep Cherokee. The *493 company owns three Chevrolets and an Oldsmobile. All four cars have over 130,-000 miles. The company owns a 1986 one-ton pickup and a fifteen year old Mercedes.
Lyle’s wife testified that she was familiar with the businesses’ bookkeeping. She stated that Lyle has the use of an expense account, automobile, gasoline and car maintenance at company expense.
Tax returns for Lyle and Torch, Inc. were introduced. Lyle’s 1987 federal tax return reports a gross income of $37,058 including $37,440 in wages. His adjusted gross income was also $37,058. The trial court quashed the subpoena for the wife’s tax returns because of the alleged marriage contract. Though it was later shown that the marriage contract had been rescinded, no further attempt was made to introduce the wife’s tax returns.
In its reasons the trial court stated: Evidence as to the father’s current wife’s means and income was excluded by the Court on the basis of a marriage contract executed by Lyle Stockstill [the father] and his second [current] wife, Lana Hin-gle. However, later in the trial, Donna [the mother] O’Brien’s attorney introduced into evidence a subsequent rescission of the marriage contract and the establishment of a community property regime between Lyle Stockstill and Lana Hingle. What is troublesome to the court is that Lyle Stockstill’s present wife was not recalled to the witness stand so that testimony could be elicited concerning her income and expenses. Therefore, the only evidence before the court with regard to the rule to increase child support is the father’s annual income of $37,440.00.
Relevant to child support, La.C.C. Art. 231 provides:
Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it.
The totality of all pertinent circumstances must be considered in determining an appropriate child support award and absent a clear abuse of discretion, a trial court’s award of child support will not be disturbed on appeal. Guillory v. Guillory, 503 So.2d 636 (La.App. 4th Cir.1987).
By only considering Lyle’s reported annual income of $37,440, the trial court did not consider all pertinent circumstances. Evidence regarding the financial status of Torch, a corporation owned by Lyle and his wife, was certainly pertinent to his ability to pay child support. The trial court abused its discretion by not considering that evidence.
We now consider that evidence.
The 1985 federal tax return for Torch, Inc. indicates gross receipts of $6,089,649, a total income of $2,515,348, and taxable income of $137,279. The taxable income is after deducting $544,441 for depreciation and $3,104 for amortization of a non-compete covenant. Total assets were $3,557,846. The balance sheet shows unappropriated retained earnings of $1,298,735, an increase of $476,133 during the tax year, plus paid-in capital of $1,000. Current liabilities are $363,706 and total liabilities are $2,258,111. Net worth is $1,299,-735. The return shows that Lyle owned 100% of Torch stock.
Torch, Inc.’s 1986 federal tax return consolidates Torch and Coastline Construction, Inc, a wholly owned subsidiary apparently acquired sometime after 1985. The return shows gross income of $5,681,167; gross income less costs of sales, or adjusted gross of $3,596,657; and taxable income of $52,159 after deducting $542,091 for depreciation and $15,000 for amortization of a non-compete covenant. Total assets were $4,845,661.
A March 1987 consolidated balance sheet reflects retained earnings of $1,832,478, an increase of $693,707 over the March 1986 balance sheet. Current liabilities are $1,027,228, total liabilities are $3,012,183, and a net worth of $1,833,478.
Lyle’s wife testified that Torch’s 1987 tax return had not been prepared but its income would be less than previous years. March 1988 balance sheets were introduced for Torch and Coastline. Combined fig *494 ures[1] show gross income of $9,145,677; gross income less cost of sales, or adjusted gross of $3,908,383; gross income minus cost of sales, ordinary expenses and depreciation, or taxable income of $1,359,127. Total assets were $5,375,531, total liabilities $3,201,527, and retained earnings of $2,295,987.
The 1987 financial statement for Captain Shane Seafood, Inc., shows a net loss of $92,353. The bottom of that statement notes “[t]he above income statement is exclusive of the Torch 7050 account which totals are $126,957.00.” It is unclear what that figure represents.
The evidence shows Lyle and his wife have considerably more resources than the $37,440 on which the trial court based the support award.
RETROACTIVITY OF AWARD AND ATTORNEY’S FEES
Donna urges that the award should have been made retroactive to the date of filing of the rule for increase and that she should have received attorney’s fees since the judgment made past due child support ex-ecutory.
The award does include attorney’s fees and was made retroactive to the date of filing.
AGREEMENT TO MODIFY THE PREVIOUS SUPPORT AWARD
At the time Lyle purchased the Biloxi house from Donna, he reduced child support payments from $400 to $250. Donna and her children, including the son from her second marriage, continued to live in the house. The trial court found that the parties had agreed to the modification. Donna urges no such modification was made.
Among other evidence in support of the trial court’s finding, the mother’s forma pauperis application shows she received $250 plus free rent from the father. On the same form she listed a $300 per month judgment against her second husband, though she was not receiving that sum. The trial court obviously believed that Donna presented it that way to reflect a modification. We have no basis to disturb that finding.
The case is remanded for further proceedings consistent with this opinion. The trial judge should consider all of Lyle’s resources, including his interest in Torch, Inc. to determine Donna’s entitlement to increased child support, as well as the amount of arrearages owed by Lyle. It is clear that Lyle’s assets are considerably greater than those reflected by his personal income tax return. Child support should be based on the “circumstances” of the paying parent, not just his income. His “circumstances” are properly determined only by consideration of all of his resources, as well as all the resources of his present wife.
Costs of this appeal are taxed against Lyle G. Stockstill.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. These figures are rounded off. Because the information for 1985 and 1986 is from tax returns, the following figures, based on balance sheets, were computed to give information comparable to the tax returns.